7150

FAULK v. COLUMBIA, NEWBERRY AND LAURENS R. R. CO.

CARRIER—FREIGHT—LIVE STOCK.—Where a carrier transports a car of horses without issuing a bill of. lading or inquiring about the value or notifying shipper of the limitations put on the value for the rate named to him on inquiry, and when it is not shown that the classification and rates published by the railroad commission were brought to the attention of the shipper, the liability of the carrier is at common law.

Before GARY, J., Richland, May, 1908. Affirmed.

Action by J. H. Faulk against Columbia, Newberry & Laurens Railroad Company. From judgment for plaintiff, defendant appeals.

*Messrs. Lyles & Lyles,* for appellant, cite: *Railroad commissioners have full power over rules and regulations:* Code, 1902, 2091, 2093; 2 Ell. on R. R., secs. 675, 678, 682, 685. *Such rules are binding within the State:* Code, 1902, 2093,

24—82

2092, 2116, 2117, 2119.   *These regulations are binding on the shipper:* Code, 1902, 2092, 2093 ; 2 Ell. on R. R., sec. 678 ; 5 Ency., 288.   *These rules do not conflict with any law of this State:* 39 S. C., 55 ; 5 Ency., 288, 289, 290 ; 9 L. R. A., 449 ; 69 Ill., 62 ; 24 Ill., 466 ; 21 Wis., 154.

*Messrs. Nelson & Nelson,* contra, cite : *A carrier cannot limit his liability by mere published notices:* 5 Ency., 290, 291, 301.

April 9, 1909.   The opinion of the Court was delivered by

MR. JUSTICE JONES.   On November 6, 1905, plaintiff shipped a carload of horses over defendant's line from Columbia, S. C., to Newberry, S. C.   When unloaded at Newberry, one horse was found injured, his leg having fallen through a defective floor of the car furnished by defendant, from which injury the horse died.   Plaintiff brought this action to recover damages for the loss of the horse at a valuation of $165, and the reasonable expense incurred in trying to cure it, and recovered judgment for $200.

The vital question was, whether the shipment was subject to a classification under which the value of the carload of horses was limited at $75 per head.

No bill of lading was issued or signed.   The plaintiff phoned for the car and ascertained that the rate would be $19 for the carload.   The car was placed for plaintiff and was loaded by him Sunday night and was unloaded by him at Newberry early Monday morning.   During the conversation over the phone nothing was said about classification or valuation other than that the rate should be $19 per carload, and plaintiff testified that he knew nothing of the classification as established by the railroad commission. The only paper in writing was the way bill covering a shipment of a carload of horses, "weight 20,000, class N, rate $19," which way bill plaintiff had never seen until the day

before the trial. There was not even an oral agreement as to classification and valuation.

The defendant proved the schedule of rates and the rules and regulations adopted by the railroad commission governing intrastate shipments at the time, and there was some evidence that the tariffs and specifications were posted or published for the benefit of the public.

It appears that the Southern Classification No. 34 applies to all roads in South Carolina, subject to the classification and rules as provided in the South Carolina exception sheet. The Southern Classification shows the maximum valuation of live stock shipments for horses and mules, each $75, and the South Carolina exception sheet classes horses and mules at class N, but does not specify valuation. Rate table, local rate tariff, distance between 40 and 50 miles, shows the highest rate per car load of 20,000 in Class N to be $19, but nothing is stated therein as to valuation.

Some of the rules of the Southern Classification provide:

1. "The reduced rates specified in this classification will apply only on property shipped subject to the conditions of this company's bill of lading. If the shipper elects not to accept the said reduced rates and conditions, he should notify the agent of the receiving carrier, in writing, at the time his property is offered for shipment, and if he does not give such notice, it will be understood that he desired the property shipped subject to the standard bill of lading conditions in order to secure the reduced rate thereon. Property carried not subject to the standard bill of lading will be at the carrier's liability, limited only as provided by common law and by the laws of the United States and of the several States in so far as they apply. Property thus carried will be charged twenty (20) per cent. higher (subject to a minimum increase of one (1) cent per hundred pounds) than if shipped subject to the conditions of the Standard Bill of Lading

6. "Where the classification provides for reduced rate, based on a certain fixed valuation, the following special release, containing the agreed valuation, must be written and signed by the shipper or owner upon the face of the bill of lading or shipping receipt. 'It is hereby agreed that the property herein designated is of the value of ........ and the rate of freight charged thereon is based on such agreed valuation, and on the condition that the carrier assumes liability only to the extent of such agreed valuation and no further.' "

The Standard Bill of Lading contained this provision: "The amount of any loss or damage for which any carrier becomes liable shall be computed at the value of the property at the place and time of shipment under this bill of lading, unless a lower value has been agreed upon or is determined by the classification upon which the rate is based, in either of which events such lower value shall be the maximum price to govern such classification."

The testimony further shows that "rules all intend that a bill of lading shall be issued for every shipment."

Upon this state of facts the Court was requested by defendant's counsel to instruct the jury as follows:

"That in the absence of a special contract of shipment, evidenced by a bill of lading issued by the railroad company at the time of shipment, under the provisions of law, all shipments must be held to have been made under the appropriate classifications and upon the rates and conditions prescribed by the Railroad Commissioners; and as there is no evidence in this case that a bill of lading or special contract was made at the time of shipment, the jury cannot find more than seventy-five dollars ($75) as the value of the horse, that being the valuation fixed by the rules of the Railroad Commissioners as Class N, at the rate of nineteen dollars ($19) per carload from Columbia to Newberry."

The Court refused to so charge and instructed the jury that, in the absence of a bill of lading or contract of ship-

ment agreeing upon a valuation, the defendant was liable as at common law for the true value of the property.

We find no error. Where a shipper of goods by special contract agrees upon a value to be placed upon such goods in case of loss and in consideration thereof obtains a reduced rate of transportation, he is bound by the stipulation and is estopped from showing that the real value of the goods was greater than that specified in the contract. *Johnstone* v. *R. R. Co.,* 39 S. C., 60, 17 S. E., 512.

It is contended that a special contract may be implied or inferred from the fact that the shipper secured transportation at the rate of $19 per carload, when the transportation rate without limitation of value was twenty per cent. higher, and from the fact that general public notice was given of the classification which limited the value of horses and mules to $75 per head.

The general rule is, "That a carrier cannot limit its liability by any mere notice unless such notice is shown to have been brought to the knowledge or attention of the shipper within a reasonable time before shipment and to have been expressly assented to by him." 5 Ency. Law, 290, and cases cited to show the necessity of express assent on the part of the shipper. The authorities which do not require express assent of the shipper require that the notice shall be clear, explicit, not unreasonable and *brought home to the shipper.* 5 Ency. Law, 291.

There appears to be much authority in other jurisdictions that there is an exception to the general rule that a common carrier cannot limit its liability by mere notice without the shipper's assent, the exception being that a published rule requiring a shipper to state the true value of the goods shipped is binding on the shipper whether brought to his attention or not. 5 Ency. Law, 289; Note to *Cole* v. *Goodwin,* 32 Am. Dec., 506.

It is supposed that such a rule is not an attempt to limit liability but is a mere regulation for the dispatch of the

carrier's business and to protect the carrier from bad faith by the shipper. We do not think the exception should be sanctioned in this State. It may be granted that the carrier has the right to inquire as to the value of the goods to be shipped, and in such case it is the duty of the shipper to make answer in good faith and to that extent the rule might be regarded as a reasonable regulation for the proper adjustment of the compensation for the risk assumed. But, in the absence of fraud or deception or misleading representations by the shipper as to the nature and value of the goods to be shipped, it is the duty of the carrier to make known to the shipper the conditions as to the value which it proposes to attach to a specified rate and procure his assent thereto.

In *Bottum* v. *Ry.*, 72 N. C., 375, 51 S. E.. 985, 2 L. R. A. (N. S.), n., the Court held that when the shipper represented by words on a box that it contained "glass," he could not recover for loss of the contents as "pictures," and that in such a case it was not the duty of the carrier to make further inquiry; but the Court recognized that when the carrier received a package marked "glass" and makes no inquiry as to its kind or value, it is responsible for any article received under the general description of glass.

Here the carrier received eleven horses for shipment without representation by the shipper or inquiry by the carrier as to their value. The conditions sought to be imposed upon the shipper without his assent in this case, are more than a regulation, they involve a limitation on the carrier's liability at common law. When the carrier would limit its common law liability to respond for the true value of the article lost or destroyed by it, the burden is on it to show the shipper's assent, *Jenkins* v. *Southern Ry.*, 73 S. C., 289, 53 S. E., 480. To sustain the appellant's contention would shift the burden on the shipper to show his non-assent.

We think also that a proper construction of the rules in question makes the assent of the shipper a prerequisite to the limited value clause, for Rule 6 provides expressly for the

shipper's special release and Rule 1 contemplates an election by the shipper to accept or reject the reduced rates with the conditions. There can be no real election by the shipper without knowledge that there is more than one object of choice. So far as appears the shipper knew of but one rate, which he paid. Hence there was no basis for an estoppel upon the ground that he received the benefit of the reduced rate with knowledge that it was based upon a particular valuation.

The contention by appellant being an attempt to limit common law liability by public notice, it must fail under the express terms of section 1709, vol. 1, Civil Code, which provides:

"No public notice or declaration shall limit or in any wise affect the liability at common law of any public common carriers for or in respect of any goods to be carried and conveyed by them; but they shall be liable, as at common law, to answer for the loss of or injury to any articles and goods delivered to them for transportation, any public notice or declaration by them made and given contrary thereto or in any wise limiting such liability notwithstanding."

The exceptions are overruled and the judgment of the Circuit Court is affirmed.